**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIGITTE DENT** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 24-6354** |
| | : | |
| **AMRESORTS, L.P.,** *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                       **January 31, 2025**

A Delaware County husband died on vacation following a midday heart attack in his room at an all-inclusive resort near Cancun. The resort did not have aspirin, did not have an ambulance on site, and directed the ambulance which arrived thirty minutes later to a private hospital an hour away rather than a neighboring public hospital under resort policy. The husband and wife arrived at the private hospital. The private hospital required the couple pay $3,000 USD before entering its facility and then demanded $41,000 USD for immediate critical care for a diagnosed ongoing heart attack. The wife did not have $41,000 USD on her. She paid the $3,000 USD entry fee and began looking for a wire transfer for the $41,000 USD while her husband awaited care. He flatlined in the hallway shortly thereafter and died after CPR.

The wife sues the United States owners and managers of the all-inclusive resort for their negligence in ensuring the safety of their guests including by sending a known heart attack patient in critical condition to a private hospital who required the resort's guests to pay a $3,000 USD entry fee and over $41,000 USD for emergency lifesaving care. The Resort's United States owners and managers now move to dismiss arguing the wife did not sue indispensable parties from Mexico and this District is not a convenient forum. The resort's owners and managers do not meet their burden on either argument. We deny their Motion.

## I. Alleged facts

Delaware County residents Brigitte and Marc Dent planned to travel to a friend's wedding in Cancun, Mexico in late March 2023.[1] They contacted all-inclusive resort Hyatt Dreams Riviera Cancun to inquire about its medical services. The Resort represented it had a doctor available twenty-four hours a day, an ambulance located on site, and staff certified in CPR.[2] The Resort told the Dents of its location thirty minutes from the cities (and presumably public hospitals) of Cancun and Playa del Carmen.[3] The Resort told the Dents they would have to pay extra for unidentified medical services.[4] The Resort is allegedly owned or managed by a variety of United States companies.[5] The Dents booked an all-inclusive room at the Resort to attend their friend's wedding.[6]

Mr. Dent told his wife of chest pains and said he needed aspirin at approximately 1:00 PM on March 25, 2023 in his Resort room.[7] Mrs. Dent went to the Resort's clinic to request aspirin and notify medical staff of Mr. Dent's chest pain.[8] The on-site physician told her the Resort did not have aspirin.[9] A Resort physician came to the Dents' room ten to fifteen minutes later.[10] The physician diagnosed Mr. Dent as experiencing a heart attack.[11] The physician arranged for an ambulance which arrived thirty minutes later.[12] The ambulance then took Mr. Dent to a private hospital, Hospiten, approximately an hour away from the Resort.[13] Hospiten staff demanded Mr. and Mrs. Dent pay $3,000 to enter.[14] Mrs. Dent paid.[15] Hospiten physicians also diagnosed Mr. Dent with a heart attack.[16]

Hospiten staff then demanded Mrs. Dent pay $41,000 before it would provide medical care.[17] Hospiten staff refused to help until the money arrived.[18] Mrs. Dent asked to transfer her husband to a public hospital with no down payment costs down the street.[19] Hospiten refused,

2

citing the risks in transporting a critical care patient.[20] A Hospiten cardiologist eventually offered to look at Mr. Dent and pushed Mr. Dent into the hallway on a gurney.[21]

An unpleaded person told Mrs. Dent twenty minutes later her husband had flatlined.[22] He died after thirty minutes of CPR.[23] Hospiten demanded $41,000 to release Mr. Dent's body to his wife for return to his home in Delaware County.[24] Hospiten later billed Mrs. Dent's health insurer over $100,000 for services not performed.[25]

## II.     Analysis

Mrs. Dent now sues the Resort's United States owners and managers ("Resort Owners") under Pennsylvania law alleging, among other facts, they should have known Hospiten would charge their invited guests extortionate fees up front before rendering medical care and Resort Owners chose to send Resort patients to the extortionate private hospital Hospiten almost an hour away instead of the public hospital down the street because the Resort profited from its relationship with Hospiten.[26] Mrs. Dent claims the Resort Owners are vicariously liable for negligence for failing to create and implement policies and procedures, uphold corporate instructions, manage the premises, and hire competent medical staff, and for entering into a relationship with the known extortionate private hospital Hospiten.[27] Mrs. Dent also brings claims for wrongful death, survival, and negligent infliction of emotional distress.[28]

Resort Owners do not challenge the merits or adequacy of pleading; they instead move to dismiss under Rules 19 and 12(b)(7) because Mrs. Dent did not sue required parties including the hotel manager, the on-site physician, the ambulance company, emergency medical technicians, and Hospiten providers and staff.[29] They also argue we should dismiss because this District is an inconvenient forum and this suit would be more appropriately filed in Mexico.[30]

3

The Resort Owners have not established Mrs. Dent did not join required parties. We decline to dismiss this matter for *forum non conveniens* because Resort Owners have not established Mexico is an adequate alternative forum.

**A. Mrs. Dent did not fail to join indispensable parties for her narrowly drawn claims.**

Resort Owners argue Mrs. Dent has failed to join required parties—the hotel manager, the on-site physician, the ambulance company, emergency medical technicians, and Hospiten providers and staff—and therefore we must dismiss.[31] Resort Owners may move to dismiss the amended Complaint under Rule 12(b)(7) for "failure to join a party under Rule 19."[32] "In reviewing a Rule 12(b)(7) motion to dismiss, [we] must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party."[33]

We ask three questions to determine whether we should dismiss Mrs. Dent's amended Complaint under Rule 12(b)(7): (1) "considering the qualifications under Rule 19(a)(1)(A) and (a)(1)(B), should the absent party be joined?"; (2) "if so, is joinder feasible—that is, can the party be joined without depriving the court of the ability to hear the case?"; and finally (3) "if joining the party is not feasible, should the action continue in the party's absence or be dismissed?"[34]

The Resort Owners do not show the absence of required parties under Rule 19(a)(1)(A) and (a)(1)(B). Resort Owners argue Mrs. Dent failed to join required parties referenced in her amended Complaint: the hotel manager, the on-site physician, the ambulance company, emergency medical technicians, and Hospiten providers and staff.[35]

Our analysis under Rule 19(a)(1)(A) concerns whether we "can grant complete relief to persons already named as parties to the action; what effect a decision may have on absent parties is immaterial."[36] Resort Owners do not suggest we cannot grant complete relief to Mrs. Dent without the absent parties under Rule 19(a)(1)(A). We independently conclude the hotel manager, the on-site physician, the ambulance company, emergency medical technicians, and Hospiten

4

providers and staff "are not necessary parties that need to be joined to this action pursuant to Rule 19(a)(1)(A)."[37]

Resort Owners seemingly present arguments under Rule 19(a)(1)(B)(i), but not Rule 19(a)(1)(B)(ii).[38] The Supreme Court in Rule 19(a)(1)(B)(i) requires us to join as a party a "person claim[ing] an interest relating to the subject of the action . . . so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest[.]"[39] "Under Rule 19(a)(1)(B)(i), a party is only necessary if it has a legally protected interest, and not merely a financial interest, in the action."[40]

Resort Owners generally argue the hotel manager, the on-site physician, the ambulance company, emergency medical technicians, and Hospiten providers and staff are required parties. But they do not explain what claims they are required for.[41] They do not address "whether a party is required to be joined in litigation necessitates a fact-specific examination of the interests implicated by the specific claims and underlying law at issue."[42] The Resort Owners do not offer these arguments. We cannot make them on their behalf.

Resort Owners instead claim "an insurmountable prejudice" because they "are left to stand alone before a jury to answer for the conduct of individuals and entities that they do not own, and that are not their employees, agents, or representatives."[43] But this argument is an allegation of insufficient pleading under Rule 12(b)(6), not an allegation unnamed parties will be prejudiced by judgment in this case. And Mrs. Dent is not arguing medical negligence or some failure of the staff. She instead focuses on managerial and supervisory negligence unrelated to Hospiten's medical care. If the Resort Owners believe their connection to the alleged damages caused by Mr. Dent's tragic passing is tenuous, there are avenues to make such an argument. But Rule 19 is not one of them. The Resort Owners also impliedly argue joint and several liability for tortfeasors is

unfair.[44] But "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party."[45] "The possibility that potential claims for contribution and indemnification exist involving absent parties does not render those absent parties necessary or indispensable."[46]

The Resort Owners lastly argue Mrs. Dent's references to Hospiten and its staff establishes their indispensability and this suit threatens to harm their reputations.[47] But they offer no law supporting their theory an injured party must sue every person identified in their allegations who might be reputationally harmed. This absence of cited authority is likely because there is no law in support: the Court of Appeals for the Ninth Circuit observed "[w]e are aware of no cases holding that a joint tortfeasor's reputational interests alone may make it a required party under Rule 19(a)."[48] This argument fails absent authority.

The Resort Owners did not meet their burdens under Rule 19. We deny their Motion based on indispensable party theories.[49]

### B. Resort Owners do not show why we need to dismiss under the doctrine of *forum non conveniens*.

Resort Owners also argue we should dismiss because this District is an inconvenient forum and this suit would be more appropriately filed in Mexico.[50]

We may dismiss under the doctrine of *forum non conveniens* "on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy."[51] We are "accorded substantial flexibility in evaluating a *forum non conveniens* motion, and each case turns on its facts."[52] Our "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."[53]

Our Court of Appeals offers a three-part test for analyzing *forum non conveniens*. First, "we determine whether the proposed alternative forum is adequate."[54] If so, we must next decide

the degree of deference due to the plaintiff's forum choice.[55] We lastly "balance the relevant private and public interest factors" to determine whether it would be more appropriate and convenient for the Delaware County wife and United States companies to proceed in Mexico.[56] Defendants invoking *forum non conveniens* bear the burden of persuasion at each of these three stages.[57]

We start and end with the Resort Owners not showing an alternative forum. An alternative forum is available if "all defendants are amenable to process there" and is generally adequate if the plaintiff's claim "is cognizable in the forum's courts."[58] Where the other forum's remedy is clearly unsatisfactory, it may not be an adequate alternative.[59]

Our colleagues have found Mexico is an adequate alternative forum where defendants have demonstrated they are subject to or consent to service of process in Mexico.[60] But Resort Owners do not argue they are amenable to process in Mexico; they only argue various non-parties are.[61] "Consents to jurisdiction or representations that a party is amenable to process in a foreign country are normally made in an affidavit or other declaration by the party so consenting."[62] "Not only are affidavits and declarations evidence that a court may properly rely on, but the signatories are legally bound by the contents of their sworn documents."[63] Resort Owners do not represent they are amenable to process, let alone submit sworn affidavits confirming their consent.

And Resort Owners have "provided no evidence [their] consent to jurisdiction in [Mexico] would be legally meaningful even if it were presented in a proper evidentiary form" because they do not argue they are subject to the jurisdiction of Mexican courts.[64] "[N]or do we know if [Mexican] courts permit litigation over this subject matter"; "[w]ithout guidance from [Mexican] legal experts or even citations to [Mexican] law or treatises, we do not know whether [Mexico's]

7

personal and subject-matter jurisdiction requirements could be satisfied on the facts alleged here."[65]

Resort Owners' showing is insufficient when we consider guidance from our colleagues when assessing an adequate alternative forum. For example, in *Wilmot v. Marriott Hurghada Management*, Marriott moved to dismiss for *forum non conveniens* in favor of Egypt or the United Kingdom.[66] There, "Marriott agreed to accept service of process in Egypt and consent to the Egyptian courts' jurisdiction . . . [and] also submitted an affidavit by Tarek Ahmed Roushdy Ezzo, Managing Partner of the Egyptian law firm Ezzo Advocates, which attested Wilmot's claim would be cognizable in Egyptian courts."[67] Marriott "also offered the United Kingdom as an available and adequate alternative forum[,] . . . agreed to accept service of process in the United Kingdom and to waive any jurisdictional or statute-of-limitations defenses to claims brought there."[68]

Resort Owners have not established Mexican courts "would be able to exercise jurisdiction over these parties and this subject matter, or to provide a satisfactory remedy" because they do not establish they are amenable to service in Mexico, Mexican courts would have jurisdiction over them, or Mrs. Dent's claims are cognizable under Mexican law.[69]

"Because identifying an available and adequate alternative forum is a necessary prerequisite for *forum non conveniens* dismissal, we need not address the final step of the *forum non conveniens* analysis, the balance of the public and private interest factors."[70]

### III. Conclusion

The Resort Owners do not meet their burdens to preliminarily dismiss under Rule 19 or the doctrine of *forum non conveniens*. We deny their Motion.

---

[1] ECF 8 ¶ 42.

[2] *Id.* ¶ 50.

[3] *Id.*

[4] *Id.*

[5] *Id.* ¶¶ 2–39. Mrs. Dent amended her Complaint and now sues AMResorts, L.P., AMR GP Holdings, LLC, ALG Integrated Holdings, Corp. d/b/a Apple Leisure Group, ALG Vacations Corp. d/b/a Apple Leisure Group, Apple Vacations, LLC d/b/a Apple Vacations, Hyatt Hotels Corporation d/b/a World of Hyatt, John Doe Individuals 1–10, and ABC Corporations 1–10. *See id. generally*. Mrs. Dent challenged Resort Owners' removal to federal court and argued we did not enjoy diversity jurisdiction. ECFs 9, 14. We ordered limited jurisdictional discovery and further briefing. ECF 15. The parties briefed the matter after the close of expedited discovery. ECFs 18, 19. We found we enjoy diversity jurisdiction. ECF 20.  None of these owner-manager companies challenge our exercise of personal jurisdiction over them.

[6] ECF 8 ¶¶ 2, 42.

[7] *Id.* ¶ 43.

[8] *Id.* ¶¶ 44–45.

[9] *Id.* ¶ 45.

[10] *Id.* ¶¶ 46–47.

[11] *Id.* ¶ 48.

[12] *Id.* ¶¶ 49–50.

[13] *Id.* ¶ 49. "The Hospiten Group is an international health network . . . [with] twenty private medical-hospital centers in Spain, the Dominican Republic, Mexic [sic], Jamaica and Panama, and more than one hundred ambulatory health centers, both their own and associated under the brand Clinic Assist." ABOUT HOSPITEN, https://hospiten.com/en (last visited Jan. 30, 2025).

[14] ECF 8 ¶ 51.

[15] *Id.*

[16] *Id.* ¶ 52.

[17] *Id.* ¶¶ 53–57.

[18] *Id.*

[19] *Id.* ¶¶ 55–57.

[20] *Id.*

[21] *Id.* ¶¶ 60–61.

[22] *Id.* ¶ 61.

[23] *Id.*

[24] *Id.* ¶ 62.

[25] *Id.* ¶ 67.

[26] *Id.* ¶¶ 68–71.

[27] *Id.* ¶¶ 73–81.

[28] *Id.* ¶¶ 82–95.

[29] ECF 16-1 at 4–10.

[30] *Id.* at 10–15.

[31] *Id.* at 4–10.

[32] Fed. R. Civ. P. 12(b)(7).

[33] *State Auto. Mut. Ins. Co. v. Frameworkers.com, Inc.*, No. 11-3271, 2011 WL 3204838, at *2 (E.D. Pa. July 27, 2011) (citing *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009)).

[34] *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 232 (3d Cir. 2023) (cleaned up) (first citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007); then citing *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 108–09 (1968)).

[35] ECF 16-1 at 4–10.

[36] *PECO Energy Co. v. Nationwide Mut. Ins. Co.*, 586 F. Supp. 3d 339, 346 (E.D. Pa. 2022) (quoting *Gen. Refractories Co.*, 500 F.3d at 313).

[37] *Crum & Forster Specialty Ins. Co. v. Chris Eldredge Containers*, No. 22-1123, 2023 WL 1864867, at *3 (E.D. Pa. Feb. 9, 2023).

[38] ECF 16-1 at 6–7. The "multiple liability" clause in Rule 19(a)(1)(B)(ii) "is intended to protect parties from situations where compliance with one court order might compel them to breach the terms of another inconsistent order." *Krakowiecki v. Walker*, No. 22-518, 2023 WL 1444231, at *4 (W.D. Pa. Feb. 1, 2023) (citing *Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983)). Resort Owners make no such argument.

[39] Fed. R. Civ. P. 19(a)(1)(B)(i).

[40] *Krakowiecki*, 2023 WL 1444231, at *4 (cleaned up) (quoting *Liberty Mutual Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005)).
10

[41] ECF 16-1 at 6–7.

[42] *Philadelphia Indemnity Insurance Company v. Admiral Insurance Company et al.*, No. 15-3486, 2016 WL 1241865, at *3 (E.D. Pa. Mar. 30, 2016) (citing *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1121 (D. Del. 1989)).

[43] ECF 16-1 at 7.

[44] *Id.*

[45] *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008) (cleaned up) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001)).

[46] *Nat'l Liab. & Fire Ins. Co. v. Condran*, No. 21-95, 2021 WL 3884259, at *1 n.1 (E.D. Pa. Mar. 4, 2021) (quoting *State Auto. Mut. Ins. Co.*, 2011 WL 3204838, at *2).

[47] ECF 16-1 at 7 ("An adverse judgment against Moving Defendants in this matter could be viewed as tantamount to a determination that the conduct of the Unnamed Parties resulted in or contributed to the death of Plaintiffs' Decedent. This could have particularly negative consequences for Hospiten and its associated medical professionals, who are currently unknown but will likely be identified as part of the public record as discovery continues in this matter.").

[48] *Ward v. Apple Inc.*, 791 F.3d 1041, 1053 (9th Cir. 2015).

[49] We need not address whether joinder is feasible or dismissal is warranted because the Resort Owners did not meet their burden of showing the existence of required nonparties. *Epsilon Energy USA, Inc.*, 80 F.4th at 232 (first citing *Gen. Refractories Co.*, 500 F.3d at 312; then citing *Provident Tradesmens Bank & Tr. Co.*, 390 U.S. at 108–09).

[50] ECF 16-1 at 10–15.

[51] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

[52] *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (cleaned up).

[53] *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

[54] *Cousins ex rel. Est. of Cousins v. Sikorsky Aircraft Corp.*, No. 23-2629, 2024 WL 4429061, at *4 (E.D. Pa. Sept. 30, 2024) (first citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008); then citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

[55] *Id.*

[56] *Id.*

[57] *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991).

[58] *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017) (citing *Piper Aircraft*, 454 U.S. at 254 n.22).

---

[59] *Piper*, 454 U.S. at 254 & n.22.

[60] *See, e.g.*, *Alonso Hidalgo v. Agustawestland Phila. Corp.*, No. 20-6393, 2024 WL 388381, at *3 (E.D. Pa. Feb. 1, 2024) ("As a condition of dismissal here, Defendants have consented to service of process in Mexico and have agreed not to raise statute of limitations or jurisdictional defenses if this matter is brought there."); *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 443 (3d Cir. 2017) (concluding that the British Virgin Islands could serve as an adequate alternative forum in part because the defendants had "stipulated that they [would] submit themselves to the jurisdiction" of the British Virgin Islands' courts); *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) ("We have held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there."); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003) (Mexico was an adequate alternative forum "if all defendants agree to submit to the jurisdiction of the Mexican courts and waive limitations defenses").

[61] ECF 16-1 at 10–11.

[62] *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018) (first citing *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015); then citing *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 250 (4th Cir. 2011)).

[63] *Id.*

[64] *Id.*

[65] *Id.* at 621–22.

[66] *Wilmot*, 712 F. App'x at 202.

[67] *Id.*

[68] *Id.*; *see also Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1224–25 (3d Cir. 1995) (our Court of Appeals, in upholding Judge Lewis's finding India was not an adequate alternative forum, considered defendant's "affidavit of an Indian law expert noting that India has a well-developed legal system which would be able to handle the issues presented in this case" and another affidavit "stating that if the case were refiled in India, [defendant] would join in petitioning the appropriate judicial officer for expedited hearing of the matter, and that it would not file any unnecessary pleadings or requests that would impede the case"); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45 (3d Cir. 1988) (cleaned up) ("While we are aware that a motion to dismiss for *forum non conveniens* does not call for a detailed development of the entire case, we conclude that the defendants' failure to provide any record support for their contentions precluded the district court from scrutinizing the substance of the dispute between the parties and from determining whether evidence and arguments relied upon by the parties are critical or even relevant to the plaintiff's cause of action or the defendants' potential defenses.") .

[69] *Associação Brasileira de Medicina de Grupo*, 891 F.3d at 622.

---

[70] *Id.*  We also cannot see how requiring Delaware County resident Mrs.Dent and companies in the United States to resolve this dispute in Mexico would satisfy the private and public interests given Mrs. Dent's preference to sue in her home District.